Nos. 21-1568 (lead), -1569, -1570, -1571, -1573 (member cases)

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

**UNILOC USA, INC., UNILOC LUXEMBOURG, S.A.,**
*Plaintiffs-Appellants,*

**UNILOC 2017 LCC,**
*Plaintiff,*

v.

**APPLE INC.,**
*Defendant-Appellee,*

**ELECTRONIC FRONTIER FOUNDATION,**
*Intervenor-Appellee.*

Appeal from the United States District Court for the Northern District of California Nos. 3:18-cv-00358-WHA, 3:18-cv-00360-WHA, 3:18-cv-00363-WHA, 3:18-cv-00365-WHA, 3:18-cv-00372-WHA, Hon. William H. Alsup

## BRIEF OF *AMICI CURIAE* INTELLECTUAL PROPERTY LAW PROFESSORS IN SUPPORT OF INTERVENOR'S COMBINED PETITION FOR PANEL REHEARING AND REHEARING EN BANC

Phillip R. Malone
JUELSGAARD INTELLECTUAL PROPERTY
  AND INNOVATION CLINIC
Mills Legal Clinic at Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305
Tel: (650) 725-6369
jipic@law.stanford.edu

March 25, 2022                    *Counsel for Amici Curiae*

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for *amici curiae* certifies that:

1. The full names of the *amici* I represent are: Intellectual Property and First Amendment Law Professors (See Attachment A).

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) I represent is: N/A.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the *amici curiae* I represent are: None.

4. The names of all law firms and the partners or associates that appeared for the *amici* I represent or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are: None.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal: Uniloc 2017 LLC et al. v. Apple Inc. No. 3:18-cv-00360-WHA (N.D. Cal.), Uniloc 2017 LLC et al. v. Apple Inc. No. 3:18-cv-00363-WHA (N.D. Cal.), Uniloc 2017 LLC et al. v. Apple Inc. No. 3:18-cv-00365-WHA (N.D. Cal.) and Uniloc 2017 LLC et al. v. Apple Inc. No. 3:18-cv-00572-WHA (N.D. Cal.).

6. All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases is: None.

March 28, 2022

/s/ Phillip R. Malone
Phillip R. Malone
*Counsel for Amici Curiae*
JUELSGAARD INTELLECTUAL PROPERTY AND
   INNOVATION CLINIC
Mills Legal Clinic at Stanford Law School

# ATTACHMENT A TO CERTIFICATE OF INTEREST

Professor Jeremy W. Bock
Tulane University Law School

Professor Zachary L. Catanzaro
College of Law, St. Thomas University

Professor Michael A. Carrier
Rutgers University Law School

Professor Bernard Chao
Sturm College of Law, University of Denver

Professor Dennis Crouch
University of Missouri School of Law

Professor William T. Gallagher
Golden Gate University School of Law

Professor Shubha Ghosh
Syracuse University College of Law

Professor Paul R, Gugliuzza
Temple University Beasley School of Law

Professor Mark Lemley
Stanford Law School of Law

Professor Brian J. Love
Santa Clara University School of Law

Professor Pamela Samuelson
University of California, Berkeley, School of Law

Professor Sharon K. Sandeen
Mitchell Hamline School of Law

Professor Christopher B. Seaman
Washington and Lee University School of Law

Professor Rebecca Tushnet
Harvard Law School

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ........................................................................... i

ATTACHMENT A TO CERTIFICATE OF INTEREST.................................. iii

TABLE OF AUTHORITIES.............................................................................. vi

INTEREST OF *AMICI CURIAE*........................................................................ 1

SUMMARY OF ARGUMENT............................................................................ 1

ARGUMENT ....................................................................................................... 2

    I.    The Strong Presumption of Public Access to Judicial Records
         Safeguards Transparency and Accountability. ........................................ 2

    II.   The Panel Majority Wrongly Flipped the Presumption of Access
         and Suggested There is No Public Interest in Patent Licensing
         Information. ............................................................................................ 4

    III. The Panel Majority Ignored the Party's Burden to Justify Sealing
         with Specificity......................................................................................... 7

    IV. Rehearing is Warranted Because the Panel's Errors Are of
         Exceptional Importance and Cause Unnecessary Conflicts. ................... 9

CONCLUSION ................................................................................................... 11

APPENDIX ........................................................................................................A1

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE WITH  TYPE-VOLUME LIMITATIONS

## Cases

*Baxter Int'l, Inc. v. Abbott Lab'ys*,
  297 F.3d 544 (7th Cir. 2002) ...................................................................9

*Binh Hoa Le v. Exeter Fin. Corp.*,
  990 F.3d 410 (5th Cir. 2021) ..............................................................4, 9

*BP Expl. & Prod., Inc. v. Claimant ID 100246928*,
  920 F.3d 209 (5th Cir. 2019) ...........................................................3

*Ctr. for Auto Safety v. Chrysler Grp., LLC*,
  809 F.3d 1092 (9th Cir. 2016) ...................................................5

*DePuy Synthes Prod., Inc. v. Veterinary Orthopedic Implants, Inc.*,
  990 F.3d 1364 (Fed. Cir. 2021)......................................................10

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011)........................................................5

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003) ...........................................2, 3, 7

*In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  924 F.3d 662 (3d Cir. 2019)..........................................................11

*In re Elec. Arts, Inc.*,
  298 F. App'x 568 (9th Cir. 2008) ..................................................7

*In re Google Play Store Antitrust Litig.*,
  No. 21-MD-02981, 2021 WL 4190165 (N.D. Cal. Aug. 25, 2021) ...............4

*June Med. Servs., L.L.C. v. Phillips*,
  22 F.4th 512 (5th Cir. 2022) ...................................................3, 10

*Kamakana v. City & Cnty. of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) .......................................2, 3, 8, 10

*Nevro Corp. v. Bos. Sci. Corp.*,
  No. 16-cv-06830 (N.D. Cal. Feb. 15, 2018), https://perma.cc/3BSD-
  5WVV ..........................................................................................8

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589 (1978).........................................................................3, 10

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010).......................................................6

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
    825 F.3d 299 (6th Cir. 2016) ........................................................8

*Uniloc 2017 LLC v. Apple, Inc.*,
    964 F.3d 1351 (Fed. Cir. 2020)........................................8, 9, 10

*Union Oil Co. v. Leavell*,
    220 F.3d 562 (7th Cir. 2000) ........................................................2

*Valley Broad. Co. v. U.S. Dist. Ct. for Dist. of Nevada*,
    798 F.2d 1289 (9th Cir. 1986) .......................................................3

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
    913 F.3d 443 (5th Cir. 2019) ........................................................7

## Other Authorities

Bernard Chao and Derigan Silver, *A Case Study in Patent Litigation
    Transparency*, 2014 J. Disp. Resol. 83 (2014) ...........................10

Bernard Chao, *Seeking Transparency in Waco*, PatentlyO (Mar. 19, 2021),
    https://perma.cc/V9QY-5LRW .....................................................6

Fed. Trade Comm'n, *Patent Assertion Entity Activity: An FTC Study*
    (2016), https://perma.cc/2D8H-DL64...........................................7

Jonathan Stroud, *Pulling Back the Curtain on Complex Funding of Patent
    Assertion Entities*, Landslide, Nov./Dec. 2019, at 20 (2019) ........6

Mark A. Lemley & Nathan Myhrvold, *How to Make a Patent Market*,
    36 Hofstra L. Rev. 257 (2007) ......................................................6

Pride in Patent Ownership Act, S. 2774, 117th Cong. (2021) ...........7

## INTEREST OF *AMICI CURIAE*

*Amici curiae*[1] are professors of intellectual property law and include scholars who write about patent litigation and public access to court documents.[2] They have no personal interest in the outcome of this case but submit this brief to highlight the exceptional importance and far-reaching impact of the panel majority's errors on public access to judicial records and transparency in other cases.[3]

## SUMMARY OF ARGUMENT

The panel majority's opinion dangerously undermines the public's fundamental right of access to judicial records. The majority's errors—while unnecessary to its resolution of this narrow dispute—would encourage oversealing in future patent litigation. Correcting these errors is exceptionally important.

The majority improperly flipped the presumption of public access to documents filed with a dispositive pleading by disregarding the firmly established public interest in accountability and transparency. Compounding this error, the majority ignored the burden on the party seeking sealing to show compelling reasons

---

[1] EFF consents to the filing of this brief; Apple and Uniloc take no position. No party or party's counsel authored this brief in whole or in part or contributed money that was intended to fund preparing or submitting this brief. No person other than *amici* or their counsel contributed money that was intended to fund preparing or submitting this brief.

[2] *Amici* are listed in the Appendix.

[3] *Amici* thank Stanford Law School Juelsgaard Clinic students Casey Lincoln and Brendan Saunders for their substantial assistance in drafting this brief.

to overcome the presumption of access. These errors effectively establish a presumption *in favor of sealing* certain patent licensing details.

Judge Mayer's dissent powerfully describes how the majority deviated from the clearly established presumption of "a broad right of access to *all* information," including "patent licensing information." Dissent at 5. The dissent also highlights the consequences of these errors, warning that "any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat." *Id.* (quoting *Union Oil Co. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000)). The risks of undermining the public's right of access in future cases and creating conflict with this Court's own precedent and that of other courts created by the majority's erroneous language make this the rare case where panel or en banc rehearing is warranted.

## ARGUMENT

### I. The Strong Presumption of Public Access to Judicial Records Safeguards Transparency and Accountability.

The Ninth Circuit consistently holds that judicial records are subject to a "strong presumption in favor of access." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). Indeed, "[t]he public's right of access to documents filed in connection with a dispositive pleading is sacrosanct." Dissent at 2.

This presumption is grounded in the judiciary's duty to promote transparency in the legal system. *See Valley Broad. Co. v. U.S. Dist. Ct. for Dist. of Nevada*, 798 F.2d 1289, 1294 (9th Cir. 1986) (explaining that "promoting the public's understanding of the judicial process and of significant public events justif[ies] . . . a 'strong presumption'" of access). Access to records enables the public to "keep a watchful eye on the workings of public agencies." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978); *see also June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022) ("This right [of access] 'serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness.'" (quoting *BP Expl. & Prod., Inc. v. Claimant ID 100246928*, 920 F.3d 209, 210 (5th Cir. 2019)). To effectively monitor the exercise of judicial authority and promote public trust, all information relevant to dispositive issues—regardless of subject matter—must be accessible by default.

This strong presumption of access can only be overcome if the party seeking to seal records offers "specific factual findings" showing "compelling reasons" to seal. *Kamakana*, 447 F.3d at 1178 (quoting *Foltz*, 331 F.3d at 1135). Conclusory statements asserting only general complaints of competitive harm are not sufficient to meet the party's burden. *See Kamakana*, 447 F.3d at 1182; *In re Google Play Store Antitrust Litig.*, No. 21-MD-02981, 2021 WL 4190165, at *1 (N.D. Cal. Aug.

25, 2021) (rejecting Google's request to seal records where the company had only vaguely asserted that disclosure would "disadvantage Google in marketing and in negotiations"). Both this Court and the Ninth Circuit regularly hold in favor of disclosure where specific information justifying sealing was not provided to the district court. *See* Dissent at 3-4.

It is exceptionally important that this Court maintain the long-standing presumption of access to *all* information and ensure the high bar required for sealing. The parties will not do so. Frequently both sides are unconcerned with public access or affirmatively want to keep their materials from the public eye. *Cf. Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 421 (5th Cir. 2021) ("When it comes to protecting the right of access, the judge is the public interest's principal champion. And when the parties are mutually interested in secrecy, the judge is its *only* champion.").

## II. The Panel Majority Wrongly Flipped the Presumption of Access and Suggested There is No Public Interest in Patent Licensing Information.

The majority upended the presumption of access for records related to dispositive motions. The majority states that the district court "made an error of law in making a blanket ruling that the public has a broad right to licensing information relating to patents." Majority Opinion ("Maj.") at 6. It further states that "we have seen no citation of a rule of law providing a presumption of access in a patent infringement suit to information concerning consideration for the licensing of a

patent." *Id.* at 8.

These pronouncements misstate the law by suggesting the presumption of access does not apply to patent licensing information. The dissent correctly identifies this error, noting that "[t]he public presumptively has a broad right of access to *all* information filed with a court in connection with a dispositive motion, and this includes patent licensing information." Dissent at 5.

The majority compounds its error by suggesting that "[a]bsent an issue raised by the parties concerning license rights and provisions, there is no public interest or entitlement to information concerning consideration for the grant of licenses." Maj. at 7. This statement is wrong for two reasons. First, judicial accountability is itself sufficient to justify public access. No other particularized public interest must be cited to reject a sealing request, including in patent cases. *Cf. Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (emphasizing the presumption is based on the need for accountability and public confidence in the judicial system).

Second, the statement ignores that license provisions may be relevant to the disposition of cases. Patent licensing information can be relevant to attorneys' fees, *see Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1323, 1327-28 (Fed. Cir. 2011) (noting that a patentee's history of "nuisance value settlements" was relevant to the rewarding of attorney fees), compliance with FRAND licensing commitments, and

damages in patent cases, *see ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (explaining the court must consider "past and present royalties received by the patentee" in damages calculations).

Moreover, the public's interest in information about patent licenses is not, as the majority suggests, limited to "antitrust case[s] or an FTC investigation." Maj. at 7. For example, patent licensing terms are often central to the calculation of patent damages—an area of ongoing public policy debate. *See* Bernard Chao, *Seeking Transparency in Waco*, PatentlyO (Mar. 19, 2021)*,* https://perma.cc/V9QY-5LRW ("The public debate in patent law has often focused on whether courts and juries are getting patent damages right. Looking at relevant filings on damages provides critical information for this important discussion."). Some scholars have proposed even broader transparency reforms to improve the efficiency of patent licensing markets. *See* Mark A. Lemley & Nathan Myhrvold, *How to Make a Patent Market*, 36 Hofstra L. Rev. 257, 258 (2007) (arguing that "requir[ing] publication of patent assignment and license terms" would improve the patent licensing market).

The public has a particular interest in understanding the organizational and financing structures of patent assertion entities (PAEs), such as Uniloc. *See* Jonathan Stroud, *Pulling Back the Curtain on Complex Funding of Patent Assertion Entities*, Landslide, Nov./Dec. 2019, at 20, 21-22 (2019). Complicated PAE organizational structures can obscure the true patent owner, creating informational asymmetries

that disadvantage licensees.[4] Fed. Trade Comm'n, *Patent Assertion Entity Activity: An FTC Study* 52-53 (2016), https://perma.cc/2D8H-DL64. This is particularly problematic because PAEs frequently extract nuisance-value settlements from licensees. *Id.* at 91-92.

True, there will sometimes be good reasons to keep license terms secret in some cases. *See, e.g.*, *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008). But this Court has never before created a presumption that they must be sealed, and doing so conflicts with the law in every other field. The decision to seal information in one case does not imply that similar types of information should be sealed in all cases. Dissent at 4. Rather, courts "must undertake a case-by-case, 'document-by-document,' 'line-by-line'" analysis of the facts in each case. *Le*, 990 F.3d at 419 (quoting *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 451 (5th Cir. 2019)). The majority's erroneous suggestion that patent licensing information is presumptively sealable risks seriously undermining the fundamental right of public access in future cases well beyond this one.

## III. The Panel Majority Ignored the Party's Burden to Justify Sealing with Specificity.

In addition to flipping the presumption of access, the majority upends the stringent standard for sealing. A party must provide "specific factual findings" to

---

[4] Clarity in patent ownership is a matter of active debate in Congress. *See* Pride in Patent Ownership Act, S. 2774, 117th Cong. (2021).

justify sealing dispositive records, *Kamakana*, 447 F.3d at 1178 (quoting *Foltz*, 331 F.3d at 1135). But the majority instead suggests that vague references to trade secrets suffice. Genuine trade secrets are sealable, *see Kamakana*, 447 F.3d at 1179, but parties must still demonstrate that the information meets the definition of a trade secret, *see, e.g.*, *Nevro Corp. v. Bos. Sci. Corp.*, No. 16-cv-06830 (N.D. Cal. Feb. 15, 2018), https://perma.cc/3BSD-5WVV (rejecting a sealing request where the party made frivolous and unsubstantiated claims that records were trade secrets).

The majority ignored the parties' burden to prove that the licensing records at issue here are trade secrets. It remanded to the district court to make a particularized determination on the sealing requests, but did not mention the burden on Uniloc or third party licensees to provide specific justifications for their claim. This is a marked departure from this Court's earlier insistence—in this very case—that "it was Uniloc's duty to provide compelling reasons for shielding particular materials from public view." *Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1362 (Fed. Cir. 2020) ("*Uniloc I*"). Only Judge Mayer, who authored the earlier decision, reiterates this duty. Dissent at 3 (noting the district court did not abuse its discretion in finding that "third-party licensees failed to make a compelling case" for sealing).

The panel's omission is dangerous; it improperly suggests that litigants can seal licensing information based on conclusory assertions of trade secrets and generalized allegations of competitive harm when there has been no showing that

the information has the required economic value to others. This would effectively create a presumption *in favor of sealing*. But as Judge Mayer noted in the earlier case, "[t]his argument has it backwards." *Uniloc I,* 964 F.3d at 1362.

Not all licensing details should be considered trade secrets. *See Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 547 (7th Cir. 2002) (concluding the parties failed to prove that "documents [which] include a copy of a confidential licensing agreement" needed to be sealed since they provided only "a bald assertion that confidentiality promotes their business interest"). In this case, the third parties who filed only "vague and conclusory" statements that the records are trade secrets need to demonstrate with particularity how disclosure would competitively disadvantage them. *See* Dissent at 3.

## IV.  Rehearing is Warranted Because the Panel's Errors Are of Exceptional Importance and Cause Unnecessary Conflicts.

Correcting the panel's errors is exceptionally important to ensure continued public access to judicial records. Whatever the majority intended, its statements wrongly flip the presumption of public access, misstate the public's interests, and lower the bar for parties seeking to seal documents. Other parties will assert and other district courts may rely on this erroneous language in future cases to wrongly seal records that are presumptively open to the public.

This risk is particularly problematic in patent litigation, where oversealing is rampant. *See Uniloc I*, 964 F.3d at 1363 (emphasizing the frequency of overbroad

sealing requests in patent litigation); Bernard Chao and Derigan Silver, *A Case Study in Patent Litigation Transparency*, 2014 J. Disp. Resol. 83, 83 (2014) (describing the "shocking . . . extent to which corporations fight their patent lawsuits in almost total secrecy"). The majority contributes to this erosion of public access and its opinion will increase improper secrecy well beyond this case.

The decision also creates unnecessary conflict with precedent from the Supreme Court, the Ninth Circuit, and this Court—including in this very case. *Compare* Maj. at 6 (stating "a blanket ruling that the public has a broad right to [patent] licensing information" is "an error of law"), *with Nixon*, 435 U.S. at 597 (recognizing a "general right to inspect and copy" judicial records), *Kamakana,* 447 F.3d at 1179 ("[T]he strong presumption of access to judicial records applies fully to dispositive pleadings."), *DePuy Synthes Prod., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1369 (Fed. Cir. 2021) ("[P]arties seeking confidentiality must present a strong justification to overcome the presumption of public access."), *and Uniloc I*, 964 F.3d at 1362 ("[A]ll filings were presumptively accessible.").

The majority also creates conflicts with other circuits that have consistently enforced a presumption of access and a high burden on parties seeking to seal. *See, e.g., June Med. Servs.*, 22 F.4th at 516, 519-21 (finding a district court abused its discretion when it flipped the presumption of access and rejected an unsealing

10

motion because the party seeking the information failed to show why the information should *not* be sealed); *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 677 (3d Cir. 2019) (concluding the district court's decision to seal was error because it improperly relied on the fact that "no substantial countervailing interests *other than* the public's broad right to review a judicial proceeding" were cited).

The danger posed by the majority's erroneous language for future cases makes this the rare case where panel or en banc rehearing is warranted and, indeed, essential. The errors can be easily corrected. At a minimum, the panel (or the full Court) should excise the majority's dangerous language from the opinion without necessarily affecting the remand. Otherwise, the full Court should grant rehearing to eliminate the conflicts and risks the majority's errors create. In any case, eliminating the incorrect—and unnecessary—suggestion that the usual presumption of access is flipped in cases of patent licensing is critical to safeguard public access to records and ensure that patent cases are not adjudicated behind closed doors.

## CONCLUSION

*Amici* respectfully urge the panel to amend the opinion or the full Court to grant the petition for rehearing.

March 25, 2022                    Respectfully submitted,


                                  By:  /s/ Phillip R. Malone

                                       Phillip R. Malone
                                       JUELSGAARD INTELLECTUAL PROPERTY AND
                                           INNOVATION CLINIC
                                       Mills Legal Clinic at Stanford Law School
                                       559 Nathan Abbott Way
                                       Stanford, CA 94305-8610
                                       Tel: (650) 725-6369
                                       jipic@law.stanford.edu

                                       *Counsel for Amici Curiae*

# APPENDIX

*Amici curiae* law professors are listed below. Affiliation is provided for identification purposes only. All signatories are participating in their individual capacity, not on behalf of their institutions.

Professor Jeremy W. Bock
Tulane University Law School

Professor Zachary L. Catanzaro
College of Law, St. Thomas University

Professor Michael A. Carrier
Rutgers University Law School

Professor Bernard Chao
Sturm College of Law, University of Denver

Professor Dennis Crouch
University of Missouri School of Law

Professor William T. Gallagher
Golden Gate University School of Law

Professor Shubha Ghosh
Syracuse University College of Law

Professor Paul R, Gugliuzza
Temple University Beasley School of Law

Professor Mark Lemley
Stanford Law School

Professor Brian J. Love
Santa Clara University School of Law

Professor Pamela Samuelson
University of California, Berkeley, School of Law

Professor Sharon K. Sandeen
Mitchell Hamline School of Law

Professor Christopher B. Seaman
Washington and Lee University School of Law

Professor Rebecca Tushnet
Harvard Law School

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2022, I caused the foregoing **BRIEF OF**

*AMICI CURIAE* **INTELLECTUAL PROPERTY LAW PROFESSORS IN**

**SUPPORT OF INTERVENOR-APPELLEE** to be served by electronic means

via the Court's CM/ECF system on all counsel registered to receive electronic

notices.

March 28, 2022                              /s/ Phillip R. Malone

Phillip R. Malone
JUELSGAARD INTELLECTUAL PROPERTY
    AND INNOVATION CLINIC
Mills Legal Clinic at Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305-8610
Tel: (650) 725-6369
jipic@law.stanford.edu


*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATIONS

I hereby certify as follows:

1.     The foregoing **BRIEF OF *AMICI CURIAE* INTELLECTUAL PROPERTY LAW PROFESSORS IN SUPPORT OF INTERVENOR-APPELLEE** complies with the type-volume limitation of Fed. R. App. P. 32(a) and Fed. Cir. R. 35(g), as in effect of this case's docketing date. The brief is printed in proportionally spaced 14-point type, and the brief has 2,598 words according to the word count of the word-processing system used to prepare the brief (excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)).

2.     The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and with the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac in 14-point Times New Roman font.

March 25, 2022                          /s/ Phillip R. Malone
                                        Phillip R. Malone

                                        *Counsel for Amici Curiae*